Bennie WHITEHEAD, Susan Whitehead, Individually and as Mother and Adult Next Friend of Amy Whitehead, A Minor Plaintiffs

v.

K MART CORPORATION Defendant

No. 3:95–CV–827WD.

United States District Court, S.D. Mississippi, Jackson Division.

Aug. 15, 2000.

Ross Robert Barnett, Jr., J. Tayloe Simmons, Jr., Barnett Law Firm, Ross F. Bass, Jr., Phelps Dunbar, Jackson, Paul S.

Minor, Stephen B. Simpson, Minor and Associates, Biloxi, for Bennie Whitehead, Susan Whitehead, Individually and as Mother and adult next friend of Amy Whitehead, a minor, plaintiffs.

Henry Gray Laird, III, James D. Holland, Page, Kruger & Holland, P.A., Jackson, Don Keller Haycraft, Khristina Deluna Miller, Liskow & Lewis, New Orleans, LA, for K Mart Corporation, John Does, defendants.

## ORDER

WINGATE, District Judge.

This matter is before the court pursuant to the motion of the defendant K Mart Corporation (hereinafter the "defendant" or "K Mart") for a new trial or for remittitur, contending that the court erred in submitting liability facts to the jury when the case had been remanded from the United States Court of Appeals for the Fifth Circuit to this court solely on the issue of damages; that the damages awarded by the jury, a total of $5,053,000.00, reflect a jury decision based on passion and prejudice; and that the jury was inflamed by improper closing argument. Plaintiffs oppose the motion in its entirety. Having carefully reviewed the briefs of the parties, this court finds that the defendant's motion for new trial or for a remittitur is not well taken.

### A. Backdrop

Plaintiffs herein are Bennie Whitehead, Susan Whitehead, and Amy Whitehead. The defendant is the K Mart Corporation. Here in this federal forum by virtue of diversity-of-citizenship, Title 28 U.S.C. § 1332,[1] this lawsuit features plaintiffs' state law claims accusing defendant of neg-

---

1. Title 28 U.S.C. § 1332 provides in pertinent part:

 (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

 (1) citizens of different States; ...

ligently failing to provide a safe premises for Susan and Amy Whitehead who were kidnapped from the defendant's parking lot. The plaintiffs charge that the parking lot was unattended by security and that Susan Whitehead was sexually assaulted.

On May 13, 1997, the plaintiffs first presented their case to a jury. During their testimony, the plaintiffs, Susan Whitehead and her 14 years old daughter, Amy, vividly and painfully described over their sobs, how they had been abducted by three men from the unprotected premises of K Mart and thereafter abused at a secluded, distant location. Susan Whitehead was threatened and raped, apart from her daughter who remained in the car with a knife-wielding assailant. Neither mother nor daughter knew whether the other was still alive, or whether the other was being raped by the abductors who had clearly announced this intent. Susan capitulated to rape, hoping to save their lives. Amy was not raped, but suffered the ordeal of knowing that her mother had been. Bennie Whitehead, Susan's husband, sought and was awarded consortium damages for the pain he had endured in trying to cope with this tragedy. Altogether, the plaintiffs were awarded $3.4 million. Persuaded that the jury's verdict of this amount had been occasioned by unwarranted bias, passion and inflammatory remarks by plaintiffs' counsel, the Fifth Circuit affirmed the jury's finding of liability, but remanded the lawsuit to this court on the issue of damages. A second jury, although sheltered from the pugnacious and intemperate remarks of plaintiffs' counsel, identified by the Fifth Circuit as the stimulus for the jury's large verdict, heard the evidence on damages and awarded the plaintiffs $5,053,000.00.

**B.** *Rule 59, New Trial, or Remittitur*

Rule 59 (a)[2] of the Federal Rules of Civil Procedure grants a trial court the prerogative to order a new trial based on its assessment of the fairness of the trial and the reliability of the jury's verdict. A federal court sitting in diversity, as here, applies federal standards to a motion for new trial. *See Browning–Ferris Indus., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278–79, 109 S.Ct. 2909, 2921–22, 106 L.Ed.2d 219 (1989). The trial court may grant a new trial upon a welter of circumstances: where the verdict is against the weight of evidence, *see Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 540, 78 S.Ct. 893, 902, 2 L.Ed.2d 953 (1958), *overruled on other grounds, Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); where the damages awarded are excessive; where the trial was unfair or where prejudicial error was committed. *Seidman v. American Airlines, Inc.* 923 F.2d 1134, 1139–40 (5th Cir.1991), citing *Smith v. Transworld Drilling Company*, 773 F.2d 610, 613 (5th Cir.1985). Since the court must view the evidence in the light most favorable to the jury verdict, *see Cobb v. Rowan Companies, Inc.*, 919 F.2d 1089, 1090 (5th Cir. 1991), the district court abuses its discretion by denying a new trial only when there is an "absolute absence of evidence to support the jury's verdict." *Id.*, citing *Irvan v. Frozen Food Express, Inc.*, 809 F.2d 1165, 1166 (5th Cir.1987). *See also Stokes v. Georgia–Pacific Corporation*, 894 F.2d 764, 769 (5th Cir.1990). Thus, the district court has "sound discretion" to grant or deny new trial motions. *Hidden*

---

**2.** Rule 59(a) provides in pertinent part that, "[a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; ..."

*Oaks Ltd. v. City of Austin,* 138 F.3d 1036, 1046 (5th Cir.1998); and *Bernard v. IBP, Inc.,* 154 F.3d 259, 264 (5th Cir.1998).

■ In differentiating whether a new trial or remittitur is the appropriate remedy, the Fifth Circuit has held that when a jury verdict results from passion or prejudice, a new trial, not remittitur, is the proper remedy. *See Wells v. Dallas Independent School District,* 793 F.2d 679, 683 (5th Cir.1986), citing *Westbrook v. General Tire and Rubber Company,* 754 F.2d 1233, 1241 (5th Cir.1985). Damage awards which are merely excessive, or so large as to appear contrary to right reason, however, are subject to remittitur, not a new trial. *Id.* Thus, when a jury's award exceeds the bounds of any reasonable recovery, this court may suggest a remittitur. The size of the remittitur, says the Fifth Circuit, must be in accordance with the Fifth Circuit's "maximum recovery rule," which prescribes that the verdict will be reduced, if necessary, to the maximum amount the jury could properly have awarded. *Hansen v. Johns–Manville Products Corporation,* 734 F.2d 1036 (5th Cir.1984), quoting *Caldarera v. Eastern Airlines, Inc.,* 705 F.2d 778, 784 (5th Cir. 1983). A verdict is excessive as a matter of law if shown to exceed "any rational appraisal or estimate of the damages that could be based upon the evidence before the jury." *Brunnemann v. Terra, International, Inc.,* 975 F.2d 175, 177–78 (5th Cir.1992), citing *Kolb v. Goldring, Inc.,* 694 F.2d 869, 871 (1st Cir.1982) (quoting *Glazer v. Glazer,* 374 F.2d 390, 413 (5th Cir.), *cert. denied,* 389 U.S. 831, 88 S.Ct. 100, 19 L.Ed.2d 90 (1967)).

■ As earlier stated, this court's grant or denial of a motion for new trial or remittitur is reviewed just for abuse of discretion. *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 116 S.Ct. 2211, 2223, 135 L.Ed.2d 659 (1996). An abuse of discretion only occurs where no reasonable person could take the view adopted by the trial court. *Id.*

## C. *The Liability Facts Submitted to the Jury*

Defendant argues that this court erred when it submitted a list of facts to the jury showing the basis for the previous jury's finding of liability against the defendant, contending that the list was irrelevant and contrary to the mandate of the Fifth Circuit which remanded the case to this court on the issue of damages alone.

The Fifth Circuit remanded this case solely on the issue of damages, noting that a new trial only on damages is appropriate where the "factual questions relating to damages are sufficiently distinct and independent of those questions pertaining to liability." *Whitehead v. K Mart,* 163 F.3d 265, 279 (5th Cir.1998), citing *Westbrook,* 754 F.2d at 1242. As the Fifth Circuit further noted, K Mart did not claim that the entire verdict was influenced by passion and prejudice, only the damages portion. Indeed, observed the Fifth Circuit, the extremely high amount of the award suggested that the jury had little doubt K Mart should be held responsible for the plaintiffs' injuries. *Id.*

So, while the Fifth Circuit remanded this lawsuit to this trial court for a re-trial, the Fifth Circuit let stand the earlier jury's verdict announcing K Mart's liability. Further, the Fifth Circuit offered no directions to this court or to the parties regarding how a new trial on the damages issue should be conducted, apparently leaving the matter to the discretion of this court.

■ Of course, this court recognizes that there are possibilities for injustice inherent in new trials devoted only to damages. *See Gasoline Products Company v.*

*Champlin Refining Company*, 283 U.S. 494, 51 S.Ct. 513, 514–15, 75 L.Ed. 1188 (1931). Nevertheless, no one should expect a damage-only jury to be able to accomplish its task without some evidentiary framework and without some factual backdrop to ease juror concern as to the earlier determination of liability and to reduce juror speculation on these matters.

While defendant argues that this court's decision to provide the list of facts was contrary to the mandate of the Fifth Circuit, the defendant offers no authority concerning how the new trial should have been conducted otherwise. Defendant simply argues that the list of facts violated Rule 403 of the Federal Rules of Evidence,[3] citing *Savoie v. Otto Candies, Inc.*, 692 F.2d 363, 370–71 (5th Cir.1982). In *Savoie*, the Fifth Circuit held that Rule 403 empowers the trial court to exclude relevant evidence if it is unduly prejudicial. *Id.* at 370.

▮▮▮▮ Defendant's flight to the shelter of Rule 403 is predictable, but unpersuasive, since this court agrees only with defendant's recitation of the pronouncements of the Rule, and not its applicability. First, a district court has broad discretion in assessing admissibility under Rule 403, and its determination is reviewed only for abuse. *United States v. Royal*, 972 F.2d 643, 648 (5th Cir.1992), *cert. denied*, 507 U.S. 911, 113 S.Ct. 1258, 122 L.Ed.2d 655 (1993). Secondly, because Rule 403 requires the exclusion of relevant evidence, it is an extraordinary measure that should be used very sparingly. *United States v. Pace*, 10 F.3d 1106, 1115 (5th Cir.1993), *cert. denied*, 511 U.S. 1149, 114 S.Ct. 2180, 128 L.Ed.2d 899 (1994); *United States v. McRae*, 593 F.2d 700, 707 (5th Cir.), *cert.*

*denied*, 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979). Thirdly, as noted by the *Savoie* Court, "McCormick, *Evidence* § 185 at 439, n. 31 (2d ed.), observes '[I]t should be emphasized that prejudice, in this context (under Rule 403), means more than simply damage to the opponent's case. . . . What is meant here is an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one.' " *Savoie*, 692 F.2d at 371.

According to the defendant, this court's list of facts should not have referred to K Mart's discontinuation of security service; or to criminal activity having been observed in the K Mart parking lot, including armed robbery; or to K Mart's not having security service for three months prior to the incident giving rise to the plaintiffs' injuries. Defendant also says that the list should not have referred to the fact that K Mart decided to reinstate security service two days prior to the plaintiffs having been abducted from the parking lot, or to the lack of policies against loitering in the parking lot. Thus, according to the defendant, K Mart's failure to provide security and the consequences arising from the lack of security, while relevant to liability, have nothing whatsoever to do with damages and should have been excluded from the list given to the new jury. This court is not persuaded, particularly when these matters simply educated the jury as to the factual underpinnings of the previous jury's finding of liability and answered questions a prudent jury would ask after hearing plaintiffs' testimony and wondering how plaintiffs could have been abducted without any assist from security.

---

**3.** Rule 403 of the Federal Rules of Evidence provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Defendant here advances the logically flawed theory that a subsequent jury empaneled to decide only the issue of damages is, by law, required to be more ignorant of the liability facts than the initial liability-finding jury. If, under the law, any verdict by a subsequent jury which has been educated on key liability facts is deemed automatically tainted, then no jury should be authorized to bear both the liability question and the damage question.

Further, a "damages-only jury" is a mischaracterization; it is a "damages verdict" jury. Defendants would have this court focus on the former term and restrict all evidence not tightly falling into the category of damages. The latter expression more accurately describes the function of the subsequent jury—one empaneled to decide the issue of damages on an evidentiary bedrock which, when warranted, might include some historical facts fleshing out the background of the dispute, elucidating and clarifying certain historical facts which, if unprovided, might trigger unwarranted jury speculation and hamper the plaintiffs' fair right to tell their story of how they have been hurt, why they have been hurt, and who hurt them.

The Fifth Circuit has not addressed the matter of advising new juries convened for the purpose of finding only damages of the facts upon which their findings are to be predicated. However, in *Watts v. Laurent*, 774 F.2d 168 (7th Cir.1985), *cert. denied*, 475 U.S. 1085, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986), the Seventh Circuit stated that a new jury convened for the purpose of determining damages alone should be instructed that the relevant issues of liability have been previously decided and also should be instructed as to the legal basis of defendants' liability.

■■■ This court agrees with the holding in *Watts* where the Seventh Circuit reasoned that the parties should have an op-

portunity to present to the second jury whatever evidence (through testimony, in summary form or as the district court shall permit) from the liability phase of the trial may be regarded as relevant in any way to the question of damages. To the extent that the parties could stipulate to evidence or summaries of evidence from the liability phase, the proceeding, said the Seventh Circuit, would be expedited. The Court concluded that the trial judge should apply a broad standard with respect to the relevance of this sort of evidence and that there should be a strong presumption that evidence from the liability phase of the first trial was relevant in some way to damages. *Id.*, 774 F.2d at 181. This pronouncement from the Seventh Circuit greatly undermines the defendant's suggestion that evidence from the liability phase of the trial should be viewed as irrelevant.

This court simply refused to require the new jury to try the case in a vacuum. The impact of the evidence which the defendant wished to have withheld from the jury was relevant to the legal basis for K Mart's liability and was presented to the jury on that basis, notwithstanding that information also may have been damaging to the defendant's case. Moreover, the list certainly did not preclude the parties from free presentation of evidence and information from the liability phase to the extent that such evidence either was relevant to the imposition of damages, or relevant to the amelioration of damages.

Therefore, this court concludes that the defendant's claim of error in this instance is predicated on nothing more than the assertion that the new jury should not have been given the established facts of this case to assist them in the determination of damages. Defendant has submitted no authority to support its argument. Furthermore, this court finds that the

facts presented did not violate Rule 403 of the Federal Rules of Evidence. Decisions regarding Rule 403 are committed to the trial court's sound discretion. *Harpring v. Continental Oil Company*, 628 F.2d 406, 409–10 (5th Cir.1980), *cert. denied*, 454 U.S. 819, 102 S.Ct. 100, 70 L.Ed.2d 90 (1981). The defendant's claim that giving the new jury a list of facts pertaining to liability established in the previous trial provides no basis for granting a new trial of this case.

### D. The Damages Awards Evince Passion and Prejudice

In the first trial of this case on both liability and damages, the jury's award of $3.4 million for injuries sustained by the plaintiffs in their abduction from the defendant's parking lot was found by the Fifth Circuit to be influenced by passion and prejudice due to the misbehavior of the plaintiffs' attorney.[4] The Fifth Circuit overruled the jury's award and remanded the case to this court for retrial of the damages issue, noting several factors contributing to its conclusion that the plaintiffs' attorney acted unfairly in the presentation of his case. The Fifth Circuit was particularly critical of counsel's closing arguments which improperly emphasized the store's status as an out-of-state corporation in an attempt to inflame local bias; and which improperly invoked the Golden Rule by asking the jurors to place themselves in the position of the plaintiffs. The Fifth Circuit also noted counsel's reference to himself as "a little old lawyer down here in Mississippi" who had to take on a national corporation. Plaintiffs' counsel commented on the competency of the evidence he had presented by referring to his expert witness as follows: "I knew I had to bring in the best experienced person in security that I knew." Counsel commented that K Mart was "up there in Troy, Michigan, where they decide to write a two or three inch thick loss prevention manual, they don't think about the customers' safety and security in the parking lot. Because they are more concerned about profits and not people." The Fifth Circuit called this a blatant appeal to sectionalism unfitting for today's federal court, as well as comment with no supporting evidence or testimony.

Plaintiffs' counsel also asked the jury, "why didn't we ... see someone from the national company come into this courtroom and try to explain their conduct. This court sustained K Mart's objection and gave a curative instruction stating that a defendant has no obligation to produce any witnesses, much less any witnesses from out of state." Still, plaintiff's counsel persisted in this conduct, requiring this court to sustain another objection, give another curative instruction. Eventually, this court had to impose a $1,000.00 sanction on the plaintiffs' attorney, not only for his constant references to Kmart's failure to present an out-of-state witness, but also for his repeated retorts made directly to opposite counsel rather than to the court.[5]

4. While this court admonished plaintiffs' counsel on his conduct, sometimes *sua sponte*, defense counsel, though certainly experienced, hardly objected at all. This forebearance certainly proved fruitful, since this court, fretful of being viewed as partial to defendant and antagonistic to plaintiffs, and unsure whether defense counsel's silence was strategic, hesitated to make all of the defense counsel's objections for him. Nevertheless, on appeal, the defense successfully persuaded the Fifth Circuit that defense counsel, although competent at trial, should be beneficiaries of their muteness at trial.

5. This court additionally sanctioned plaintiffs' counsel and assistants at other times during the trial, the first, *sua sponte*, during jury selection.

Finally, the Fifth Circuit cited as highly prejudicial the comment of plaintiffs' counsel that Susan Whitehead's last thought before her eventual death would be of the rapists, and that Amy Whitehead needed to be compensated to avoid thoughts, on her wedding night, of her mother's rape.

This court imposed no additional sanctions upon plaintiffs' counsel at the second trial, finding it unnecessary to do so. Plaintiffs' counsel comported himself in a manner more congruent with the dignity of this court during the progress of the second trial, and his comment on the thoughts of Susan and Amy Whitehead during closing argument standing alone was, in this court's view, insufficient to constitute sufficient prejudice to require a new trial. Notwithstanding the improved behavior of plaintiffs' counsel, the jury returned a combined verdict for all three plaintiffs which exceeded the first jury's finding by over 1.6 million dollars.[6]

Defendant contends that this court now should grant its motion for new trial or in the alternative, its motion for remittitur, because the jury award was so excessive and against the great weight of the evidence as to indicate bias or prejudice by the jury. *See Martin v. City of New Orleans*, 678 F.2d 1321, 1326–27 (5th Cir. 1982) (jury verdicts on damages may be overturned upon a clear showing of excessiveness or upon a showing that they were influenced by passion or prejudice). This court is not persuaded.

 A trial court's determination as to whether the verdict is the result of passion or prejudice is a matter of discretion, *Deloach v. Delchamps*, 897 F.2d 815, 820 (5th Cir.1990), which will not be dis-turbed on appeal, unless the determination is clearly erroneous. *Edwards v. Sears, Roebuck and Company*, 512 F.2d 276, 280–81 (5th Cir.1975), citing 6A *Moore's Federal Practice* ¶ 59.05(3), at 59–59 (1974). A verdict will be found to be excessive by a trial court as a matter of law if shown to exceed "any rational appraisal or estimate of damages that could be based upon the evidence before the jury." *Brunnemann v. Terra International, Inc.*, 975 F.2d 175, 178 (5th Cir.1992), citing *Kolb v. Goldring, Inc.*, 694 F.2d 869, 871 (1st Cir.1982) (quoting from *Glazer v. Glazer*, 374 F.2d 390, 413 (5th Cir.), *cert. denied*, 389 U.S. 831, 88 S.Ct. 100, 19 L.Ed.2d 90 (1967)). A jury's award should not be disturbed unless it is "entirely disproportionate to the injury sustained." *Seidman v. American Airlines*, 923 F.2d 1134, 1140–42 (5th Cir. 1991), citing *Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983). While the sky cannot be the limit, pain and suffering and non-economic considerations are, to a large degree, not susceptible to monetary quantification, and the jury thus necessarily has especially broad leeway. *Id.*, citing *Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421, 1427 (5th Cir.1988). A party seeking a new trial based on the alleged passion and prejudice of the jury must show clearly the absolute absence of evidence to support the jury's verdict. *Rutherford v. Harris County, Texas*, 197 F.3d 173, 179 (5th Cir. 1999); and *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998).

### 1. The Supporting Evidence

 In the instant case the evidence was not lacking. Dr. Ann Burgess,

---

**6.** Defendant is hard-pressed to explain why the second jury handed down a much larger verdict than the earlier, "prejudicially passioned" first jury, whose verdict was supposedly enlarged by the inflammatory antics of plaintiffs' counsel. Of course, a simple expla-nation is this: the first jury was not impressed by these antics and responded less enthusiastically to his arguments and observations, while the second jury, exposed to a much more amicable fellow, listened to him more and gave his clients' demand more credibility.

the plaintiffs' expert witness, stated that the plaintiffs, Susan Whitehead and her daughter Amy Whitehead, were the victims of severe and permanent emotional injury. According to Dr. Burgess, the trauma of the abduction, robbery, threats of death and rape caused Susan Whitehead to suffer disassociation, problems with intimacy, flashbacks, nightmares, and depression, and to become suicidal. Dr. Burgess opined that the crime itself was made more complex by the involvement of both the mother and daughter. Both Amy and Susan Whitehead, said Dr. Burgess, were particularly traumatized by being separated during the ordeal, and each not knowing what had happened to the other. Dr. Burgess noted that the daughter Amy Whitehead, while not actually raped, was threatened with both rape and death and did not know what was happening to her mother after the perpetrators separated them. Dr. Burgess also noted that Amy Whitehead developed traumagenic amnesia which rendered her incapable of remembering the incident. Then, several weeks later, when attending school, her memory came back and she had to be taken to the hospital.

Dr. Burgess also described the current medical treatment received by both Susan and Amy Whitehead, as well as their need for future psychiatric evaluation and treatment. Dr. Burgess concluded that Bennie and Susan Whitehead, and Amy Whitehead, all would require what she referred to as "multi modal psychological counseling" for several years to come.

■ The jury believed the plaintiffs' assessment of their injuries and awarded Bennie Whitehead $400,000 for loss of consortium. The jury also awarded Amy Whitehead $176,000.00 for past and future medical expenses, as well as $1.25 million for past and future pain and suffering. The bulk of the damages award was given to Susan Whitehead, $227,000.00 for past and future medical expenses, as well as $3,000,000.00 for past and future pain and suffering. While reassessment of a pain and suffering award "is inherently subjective in large part, involving the interplay of experience and emotions as well as calculation, the touchstone must be the facts in the record in the individual case." *See Knight v. Texaco, Inc.,* 786 F.2d 1296, 1299 to 1301 (5th Cir.1986), citing *In re Air Crash Disaster Near New Orleans, La.,* 767 F.2d 1151, 1156 (5th Cir.1985).

Under the unique facts and circumstances of this case, this court is unable to conclude that the jury had insufficient evidence to support their findings as a rational determination or to conclude that the damages awarded were disproportionate to the injuries suffered by the three plaintiffs. Thus, this court sees no reason to grant a new trial based on the claim that the amounts awarded evince the prejudice and passion of the jury.

### 2. Remittitur

■ Damage awards which are so large as to appear contrary to right reason are subject to remittitur. The Fifth Circuit, however, will not reverse a jury verdict for excessiveness except on the strongest of showings, *Caldarera v. Eastern Airlines, Inc.,* 705 F.2d 778, 784 (5th Cir.1983), and will not allow remittitur to stand where the jury's verdict was "clearly within the universe of possible awards supported by the evidence." *Bonura v. Sea Land Service, Inc.,* 505 F.2d 665, 670 (5th Cir.1974), citing *Gorsalitz v. Olin Mathieson Chemical Corporation,* 429 F.2d 1033 (5th Cir.1970). As previously noted, this court is not persuaded that the jury's verdict in the instant case exceeds a rational appraisal or estimate of the damages that could be based upon the evidence. *See Brunnemann v. Terra International, Inc.,* 975 F.2d at 178.

The primary case relied upon by the defendant in support of remittitur is *Zerangue v. Delta Towers, Ltd.*, 820 F.2d 130 (5th Cir.1987), where the plaintiff was accosted, robbed and raped by a knife wielding assailant at 3:00 A.M. during Mardi Gras in New Orleans, Louisiana, after exiting the defendant's hotel side door and not being able to re-enter because the door could not be opened from the outside. The Fifth Circuit upheld $200,000.00 of a $228,000 .00 verdict for the plaintiff which then was adjusted under Louisiana law for her own negligence by 30%. This court has considered this case and all of the post-traumatic syndrome cases cited by the plaintiff and is unpersuaded that these decisions, each based on particular factual situations, should be applied to reduce the damages award in the instant case.

While the jury's award in the present case is large, no defects in the award are readily identifiable and measurable, and, given the facts of this case, the damages do not appear to be improperly calculated. Therefore, the defendant's motion for remittitur shall be denied.

### E. *Improper Closing Argument*

Defendant contends that the plaintiffs' closing argument to the jury was prejudicial in that the argument referred to the amount of damages suggested by K Mart as a "Blue Light Special" and belittled K Mart as a discount store. Additionally, defendant complains that the plaintiffs' reference to Susan Whitehead's deathbed thoughts and Amy Whitehead's wedding night thoughts was improper.

Generally, closing argument must go far beyond the bounds of accepted advocacy before a new trial will be granted. *Edwards v. Sears Roebuck and Company*, 512 F.2d 276, 284 (5th Cir.1975). Such comments as those complained of by the defendant, coupled with opposite counsel's failure to follow the court's instructions and the interjection of other improper argument such as "community conscience" statements condemned in *Westbrook v. General Tire & Rubber Company*, 754 F.2d 1233, 1241–42 (5th Cir.1985), and "golden rule" comments which ask jurors to place themselves in the plaintiff's position and do unto him as they would have him do unto them, disapproved of in *Stokes v. Delcambre*, 710 F.2d 1120, 1128 (5th Cir.1983), together can rise to the level of prejudice required for a new trial to be granted. While it is true that these types of arguments were made in the first trial, plaintiffs' counsel avoided them in the second trial on damages.

This court finds that the reference to K Mart as a "discount store" regarding the amount of damages suggested by defense counsel, and the reference to the thoughts of the plaintiffs, were not in themselves sufficient enough to constitute the level of prejudice required for granting a new trial.

### F. *Striking Defendant's Expert*

Next, defendant contends that this court erred when it refused to permit the defendant to designate a new expert on the issue of damages, or to order the plaintiffs to participate in a medical examination pursuant to Rule 35 [7] of the Federal Rules of Civil Procedure. This court is not persuaded. The district court's discre-

---

7. The Federal Rules of Civil Procedure authorize the physical or mental examination of a party only in limited circumstances. Fed. R.Civ.P. 35(a) provides: When the mental or physical condition ... of a party ... is in controversy, the court in which the action is pending may order the party to submit to a physical examination by a physician, or mental examination by a physician or psychologist .... The order may be made only on motion for good cause shown .... *Acosta v. Tenneco Oil Company*, 913 F.2d 205, 208 (5th Cir. 1990).

tion in managing trials "extends on remand to all areas not covered by the higher court's mandate." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of America Company,* 195 F.3d 765, 775–76 (5th Cir.1999), citing *Cleveland By and Through Cleveland v. Piper Aircraft Corporation,* 985 F.2d 1438 (10th Cir.), *cert. denied,* 510 U.S. 908, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993) ((o)ur remand for a new trial was not an invitation to reopen discovery for newly retained expert witnesses and to enlarge trial time unnecessarily through the addition of totally new exhibits and testimony); *see also Sprague v. Ticonic National Bank,* 307 U.S. 161, 168, 59 S.Ct. 777, 780, 83 L.Ed. 1184 (1939). Only if the court perceives "manifest injustice" in limiting evidentiary proof at a new trial will it, with proper notice, allow additional witnesses and relevant proof. *Cleveland,* 985 F.2d at 1450.

In the instant case, this court permitted the defendant to re-depose the plaintiffs' expert and to subpoena additional medical, school and employment records. However, this court did not permit the new expert witness or the medical examination because these were matters which easily could have been pursued prior to the first trial of this case. So, this court finds no reason to grant a new trial based on the defendant's claim that it should have been permitted to designate a new expert witness and to have the plaintiffs submit to a medical examination pursuant to Rule 35.

## CONCLUSION

Therefore, for the reasons herein stated, this court hereby denies the motion of the defendant for new trial or for remittitur.