# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00553-COA

GLENDA FAYE OWENS, INDIVIDUALLY, AND                       APPELLANT
ON BEHALF OF BRANDON TOWNSEL

v.

CARL KELLY D/B/A SERVICE ETCETERA,                        APPELLEES
LLC, AND WILLIE TAYLOR

DATE OF JUDGMENT:          11/18/2013
TRIAL JUDGE:              HON. JAMES MCCLURE III
COURT FROM WHICH APPEALED:  TALLAHATCHIE COUNTY CIRCUIT
                          COURT
ATTORNEYS FOR APPELLANT:    RALPH EDWIN CHAPMAN
                          JOSEPH HARLAND WEBSTER
                          DANA J. SWAN
ATTORNEYS FOR APPELLEES:    JOHN B. MACNEILL
                          KEVIN EARL GAY
                          LAURA MCKINLEY GLAZE
NATURE OF THE CASE:        CIVIL - PERSONAL INJURY
TRIAL COURT DISPOSITION:    JURY VERDICT FINDING IN FAVOR OF
                          APPELLEES
DISPOSITION:              AFFIRMED - 09/22/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE IRVING, P.J., MAXWELL AND WILSON, JJ.

### WILSON, J., FOR THE COURT:

¶1.    Late at night on May 26, 2005, Laura Wilburn turned out in front of an eighteen-wheeler tractor-trailer that was hauling lumber north on Highway 7 between Oxford and Holly Springs. The truck's driver, Willie Taylor, was unable to avoid Wilburn's car, and two of Wilburn's grandsons, who were in the backseat of her car, suffered serious injuries in the collision. This is a negligence action brought on behalf of one of the grandsons against

Taylor and his employer. The basic issue at trial was whether Wilburn was entirely to blame for the wreck or Taylor was also partially at fault based on the plaintiff's disputed claim that he was driving seven to twelve miles per hour above the speed limit. The jury returned a unanimous verdict finding Wilburn one-hundred percent at fault, and the court entered a judgment on the verdict.

¶2. On appeal, the plaintiff argues that the trial judge erred by allowing Wilburn to be cross-examined about, and other limited references to, the fact that she was cited for failure to yield and paid a fine rather than contesting the citation. We conclude that Wilburn's payment of the ticket was proper impeachment of her testimony, in which she generally sought to blame Taylor for the wreck. Therefore, the judge did not abuse his discretion by allowing Wilburn to be cross-examined on the subject. In addition, considered in the context of all the evidence at trial, and given that Wilburn's payment of the ticket was proper impeachment, any other mention of the ticket during the course of trial was harmless, even assuming that it was error. Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. On May 26, 2005, Wilburn drove from Memphis, Tennessee, to take her son to his home in Laws Hill, Mississippi, near Highway 310, west of Highway 7 between Holly Springs and Oxford. Four other family members made the trip with them. When Wilburn left her son's home that evening to return to Memphis, Wilburn's mother, then approximately one hundred years old, was in the front passenger seat, and three of Wilburn's grandchildren, ages eight to eleven, were in the backseat. Around 10:45 p.m., Wilburn approached Highway

2

7 traveling east on Highway 310. Wilburn testified as follows:

> I pulled up to the stop sign [on Highway 310 at the intersection with Highway 7]. I stopped. I looked both ways, wasn't nothing coming. So I sit there for a while because I wanted to pour some peanuts off into my soft drink. And I got the drink out of the thing and put it between my legs, opened the peanuts up. A car pulled up behind me and blowed his horn. So I then got the peanut -- the can and put it back into the thing and looked both ways and nothing was coming from my right -- my left I mean. And to my right the top of the, it seemed like a hill, it was a light. So it was enough distance from where I was stopped at where the light were for me to proceed out; so I proceeded out into the street. And as I was turning [north on Highway 7], the truck got I guess so close to me -- I guess I estimate how far it was from me. And I was turning it hit me in the back.

¶4. The "light" that Wilburn saw before pulling out onto Highway 7 was an eighteen-wheeler with a forty-eight-foot flatbed trailer fully loaded with lumber. Taylor was driving the truck north on Highway 7, en route to Jackson, Tennessee. Wilburn testified that she "couldn't tell how far" away the truck was when she pulled out onto Highway 7, but she thought "it was enough distance for [her] to . . . proceed out into the [northbound] lane" of Highway 7, and then "the car behind [her]," which had honked its horn at her, "could go." Tragically, Wilburn made a serious misjudgment, the truck hit the side of her car near the back door on the passenger's side, and two of her grandsons suffered severe injuries.

¶5. Wilburn testified that she could not estimate "how fast [the truck] was going," "just [that it] was speeding":

> A. Well, I say he was doing over the speed limit. I'll say that. That's what I was saying.
>
> Q. What did you tell me the speed limit was?
>
> A. I didn't really know the speed limit.

3

At one point, Wilburn erroneously stated she believed that the speed limit on Highway 7 was "40 or 45" (it is actually 55 mph), and she eventually admitted that she did not observe the truck long enough to make any judgment about its speed before she pulled out onto Highway 7. Wilburn further admitted that once she pulled out in front of the truck, there was nothing else the truck (i.e., Taylor) could have done to avoid the accident.

¶6. Taylor, an experienced truck driver, testified that he had driven up Highway 7 transporting lumber hundreds of times. He testified that he was traveling between 45 and 50 mph (below the speed limit of 55 mph). Taylor testified that Wilburn pulled out in front of him as he neared the intersection, and although he tried to brake as hard as he could and did his best to avoid her car, it was too late for him to do anything to prevent the collision.

¶7. Mississippi Highway Patrol Trooper Johnnie Smith arrived at the scene following the accident. Trooper Smith took photographs and measurements of the scene, and he interviewed Taylor. Trooper Smith testified that Taylor told him he was traveling 50 mph when Wilburn's car pulled out in front of him. Trooper Smith did *not* talk to Wilburn at the scene but nonetheless issued her a ticket for failing to yield the right of way. Upon receipt of the ticket via mail, Wilburn testified that she called the justice court and was told that she had to pay the ticket or else her license would be suspended, and so she paid the ticket.

¶8. Two lawsuits were filed as a result of the wreck. The first, which is the subject of this appeal, was filed by Glenda Faye Owens on behalf of Brandon Townsel, one of Wilburn's grandsons who sustained serious injuries in the wreck. Owens is Townsel's mother; she is also Wilburn's daughter. This suit named only Taylor and Carl Kelly (the truck's owner and

4

Taylor's employer) as defendants. A second lawsuit was filed on behalf of Jayelon Boyd, who was also injured in the collision. The second suit named Wilburn as a defendant in addition to Taylor and Kelly. The two cases were consolidated, but the *Boyd* lawsuit was settled prior to trial.

¶9. At trial, Owens's accident reconstructionist—John Corbitt, a retired Jackson police officer—estimated the truck's speed as between 62 and 67 mph before Taylor began braking. On cross-examination, however, Corbitt readily agreed that Wilburn was also at fault and, indeed, that there was "no question in [his] mind that part of the cause of this accident was that Ms. Wilburn failed to yield the right of way to [the] truck." He testified that visibility from the intersection to the south along Highway 7 was about 1,500 feet and that a vehicle traveling 65 mph would cover that distance two to three seconds faster than a vehicle traveling at the speed limit.

¶10. Defendants' accident reconstructionist, James Hannah, also a retired Jackson police officer, estimated that the truck was traveling only forty to 45 mph, consistent with Taylor's testimony. He reached a different conclusion from Corbitt regarding the truck's speed based primarily on a different interpretation of tire marks at the scene of the collision and a different conclusion regarding the braking distance of Taylor's truck.

¶11. After deliberating for thirteen minutes, the jury returned a unanimous verdict assigning one-hundred percent "fault/negligence" to Wilburn and no "fault/negligence" to Taylor. Owens filed a motion for a judgment notwithstanding the verdict or for a new trial, which was denied. On appeal, Owens makes various arguments as to why the trial judge should have

5

excluded all evidence or mention of the fact that Wilburn received and paid a ticket as a result of the wreck. We find that the trial judge committed no reversible error and that the plaintiff suffered no unfair prejudice at trial. We therefore affirm.

## DISCUSSION

¶12.    We apply the abuse-of-discretion standard of review regarding the admission or exclusion of evidence and "will not reverse unless the error adversely affects a substantial right of a party." *Whitten v. Cox*, 799 So. 2d 1, 13 (¶27) (Miss. 2000) (quoting *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 113 (¶12) (Miss. 1999)).

¶13.    Owens filed a pretrial motion in limine to exclude all evidence of or reference to the ticket that Wilburn received and paid for failing to yield. After hearing argument on the motion the day before trial began, the circuit judged stated:

> The court[ is] going to allow that ticket to come into evidence assuming that it is presented in [a] proper way because she [(Wilburn)] was . . . a defendant[1] and she is one of the parties of which will be asked by the jury to determine liability in this situation, and so I'm not going to exclude any mention of the ticket. Because, one, I don't know which side she is going to testify to. I don't know how the testimony is going to get. *But as far as I can tell on the law, it's used basically more for impeachment than it is to prove any kind of liability and there's going to be an instruction on that . . . in the event that it's used.* You all need to think about that on a jury instruction because I do hold each side to six jury instructions per side. And when you start looking about all the instructions you've got, this one may not be [a] very high . . . priority.

(Emphasis added).

¶14.    As we read the trial judge's pretrial ruling, we understand him as saying that evidence that the ticket was issued and paid would likely be admissible not as substantive evidence that

---

[1] As noted above, she was a defendant prior to settlement of the *Boyd* lawsuit.

Wilburn was at fault in the collision (not "to prove any kind of liability") but rather to impeach her anticipated testimony that she believed that she had acted prudently in proceeding into the intersection ("more for impeachment"). That is, if Wilburn testified, as anticipated, that she looked both ways and reasonably believed she had sufficient time to pull out onto Highway 7, the defendants were entitled to cross-examine her as to why she had nonetheless paid a ticket that charged her with failing to yield. Her payment of the ticket was at least in some sense a contradiction of her testimony at trial and, thus, a proper basis for impeachment. *See Harris v. State*, 878 So. 2d 90, 98 (¶45) (Miss. Ct. App. 2003) (Southwick, P.J., dissenting) ("Impeachment of a witness on any basis that would draw testimony into legitimate question is permitted.").

¶15.   The Fifth Circuit made this precise point over fifty years ago. *Johnson v. Empire Mach. Co.*, 256 F.2d 479, 482-83 (5th Cir. 1958). In *Johnson*, an employee who was involved in an accident while driving a truck owned by the defendant (his employer) was issued a ticket "for following too closely." The Fifth Circuit explained that evidence that the employee (Cooper) paid the ticket was admissible to impeach his testimony at trial:

> Cooper was not a party defendant. His employment was as a parts and delivery man. His authority to bind the defendant was limited to the scope of his employment. His action, several days after the accident, in paying a fine "for following too closely" could not be introduced as an admission against his principal.

> *The evidence was, however, clearly admissible for the purpose of impeaching Cooper after he had testified as a witness for the defendant.* Broadly speaking, his testimony tended to prove that he was free from any fault or negligence. The plaintiff then had a right to cross-examine him as to his payment of the fine without insisting on a trial. The jury might have believed his explanation or, instead, it might have inferred that he paid the fine because

7

he was not free from fault in causing the collision.

*Id.* (emphasis added and internal citations omitted).

¶16.     Similarly, Wilburn's testimony at trial was that she stopped at the stop sign, looked both ways, believed she had sufficient time to turn north on Highway 7, and that the accident occurred only because Taylor was speeding and driving much faster than she could have anticipated.  *See supra* ¶¶3-4.  Given Wilburn's testimony, the defendants "clearly" "had a right to cross-examine [her] as to [her] payment of the fine without insisting on a trial." *Johnson*, 256 F.2d at 482-83.  As in *Johnson*, Wilburn was entitled to explain why she had paid the ticket, and she did so, testifying that she received it in the mail; that no one told her she could contest it; that someone told her that her license would be suspended if she did not pay it; and that she was still caring for her injured grandson at the time.  "The jury might have believed [this] explanation or, instead, it might have inferred that [she] paid the fine because [she] was not free from fault in causing the collision." *Id.* at 483.  The impeachment value was not in the issuance of the ticket but Wilburn's failure to contest it and payment of the fine. This tended to contradict her testimony at trial and was therefore proper impeachment.

¶17.     Consistent with his pretrial ruling indicating that the evidence was admissible for impeachment, the trial judge specifically invited Owens to request an instruction on the issue. At the time of the trial in this matter, Mississippi Rule of Evidence 105 provided that "[w]hen evidence which is admissible . . . for one purpose but not . . . for another purpose is admitted, the court, *upon request*, shall restrict the evidence to its proper scope and instruct the jury accordingly."  (Emphasis added).  Thus, the burden was squarely on Owens to request a

limiting instruction if she desired it. *See, e.g.*, *Tate v. State*, 912 So. 2d 919, 928 (¶28) (Miss. 2005); *Gilmer v. Morris Goodman Builders Inc.*, 131 So. 3d 1203, 1212 (¶¶36-37) (Miss. Ct. App. 2013); *Moss v. State*, 977 So. 2d 1201, 1212 (¶23) (Miss. Ct. App. 2007).[2] She did not do so. Owens initially requested a jury instruction that "that the mere fact that Laura Wilburn paid a traffic ticket mailed to her by the State of Mississippi constitutes no evidence of negligence, fault, or responsibility for the subject accident." However, at the charge conference, Owens withdrew the request. Because Owens did not request a limiting instruction—either when the ticket was mentioned during trial or at the conclusion of the evidence—it was not error for the trial court not to give such an instruction.[3]

¶18. While we hold that cross-examination regarding payment of the ticket was proper impeachment, we must also acknowledge (1) that at a couple of points in the trial the ticket was also referenced in a manner seemingly more consistent with substantive evidence of fault and (2) that the defendants make a reasonable argument that any use as substantive evidence was entirely proper under Mississippi Supreme Court precedent. However, we conclude that any use of the ticket as substantive evidence did not affect any party's substantial rights, even if it was error, given that it was properly used for one purpose (impeachment) and considering the overall context and weight of the evidence presented at trial. Accordingly, we may affirm

---

[2] Rule 105 was amended in relevant part effective July 1, 2015. *See In re: Mississippi Rules of Evidence*, No. 89-R-990002-SCT (May 14, 2015) (en banc order), http://courts.ms.gov/Images/Opinions/198375.pdf.

[3] Of course, Owens may not have requested a limiting instruction, because she may not have wanted to "focus the jury's attention" on Wilburn's payment of the ticket. *Tate*, 912 So. 2d at 928 (¶28) (quoting *Brown v. State*, 890 So. 2d 901, 913 (¶35) (Miss. 2004)).

9

on that ground, and it is unnecessary to reach the more difficult question whether such evidence is admissible as substantive proof of fault or negligence.

¶19.    On the first point, the ticket was not unduly emphasized at trial. It was alluded to briefly in the defendants' opening argument; Owens's attorney brought up the issue preemptively during Wilburn's direct examination, allowing her to explain why she had paid the ticket; on cross-examination, Wilburn was properly impeached; Owens's accident reconstructionist was briefly questioned on the point; and the defendants referenced the ticket again briefly in closing. Trooper Smith did *not* testify about the ticket or offer any opinion at trial that Wilburn failed to yield. Given that payment of the ticket was properly used for impeachment, we are confident that any other limited use of it caused no marginal prejudice. Our confidence in this regard is buttressed by the great weight of the evidence that Wilburn, not Taylor, was the cause of this unfortunate accident. As discussed above, Owens's own expert (Corbitt) readily admitted that Wilburn was at fault in pulling out in front of Taylor *and failed to yield the right of way*. Corbitt opined only that Taylor's truck was traveling 7 to 12 mph above the speed limit and that if he had not been speeding, he would have had an extra second or two to somehow avoid Wilburn. However, the notion that the collision could have been avoided was highly speculative to begin with, Taylor and the defendants' expert denied that Taylor was speeding, and Wilburn's own testimony raised serious doubts to say the least (*see supra* ¶¶3-4).

¶20.    Thus, Wilburn's payment of the ticket was for the most part used properly for impeachment, Owens's own expert admitted that Wilburn was at fault and failed to yield (i.e.,

10

the same thing she was cited for in the ticket), and the weight of the evidence—including Wilburn's own testimony—was more than sufficient to outweigh any possible harm done by any arguable misuse of the ticket. Accordingly, any possible error was harmless and would not require reversal.[4]

¶21. Because we find that limited use of the evidence for a substantive purpose was harmless even if it was error, we need not address the defendants' broader argument that the evidence was admissible as substantive proof of negligence and fault. In support of this argument, the defendants cite *Seals v. St. Regis Paper Co.*, 236 So. 2d 388 (Miss. 1970), in which the Supreme Court held that a party was properly questioned about the fact that he had paid a fine for improperly passing a stopped school bus at trial in a negligence action arising out the incident. *Id.* at 392. The *Seals* Court reasoned: "[A] plea of guilty in a criminal case is admissible in a civil suit growing out of the same offense as an admission against interest. Of course, the defendant has a right to explain the reason for such plea[,] which Smith [(the driver)] did in this case." *Id.* For a few reasons, we are hesitant to conclude that *Seals* establishes a broad rule that the payment of a fine resulting from a traffic citation is always admissible substantive evidence of fault or negligence in a civil case arising out of the same incident. For one thing, *Seals* predates the adoption of the Mississippi Rules of Evidence. For another, *Seals* refers to "a plea of guilty," whereas payment of a typical traffic fine such

---

[4] *See, e.g.*, *Ill. Cent. R.R. v. Brent*, 133 So. 3d 760, 779 (¶42) (Miss. 2013) ("For a case to be reversed based on the admission or exclusion of evidence, a party must be actually prejudiced, harmed, or have a substantial right adversely affected. Thus, a harmless-error analysis is applicable—if the weight of the evidence against the defendant is sufficient to outweigh any harm done by allowing admission of the evidence[,] then reversal is not warranted." (internal citations and quotation marks omitted)).

11

as the one in this case may be more akin to a plea of nolo contendere.[5] In addition, at least some courts in other states have ruled that such citations are not admissible as substantive evidence of negligence.[6] Finally, we note that *Seals* is arguably distinguishable in that the driver there was a named party, whereas Wilburn was no longer a party at the trial in this case. For all these reasons, we simply conclude that Wilburn's payment of the ticket was—at a minimum—proper impeachment and that any further use of it was harmless, even assuming solely for the sake of argument that it was error.

¶22. Before concluding, we briefly address three final sub-arguments advanced by Owens: that references to the ticket amounted to improper "opinion" testimony from Trooper Smith and violated Rules 403 and 609 of the Mississippi Rules of Evidence. These arguments lack merit. Trooper Smith did not offer any opinions at trial about fault or the cause of the wreck. Therefore, this argument merely restates and adds nothing to Owens's other arguments regarding this evidence.

¶23. Nor was exclusion of the evidence required under Rule 403. "Rule 403's scope is narrow," as "it is an extraordinary measure that should be used very sparingly." *United States*

---

[5] *See Williams v. Brown*, 860 S.W.2d 854, 856 (Tenn. 1993) ("We think that the payment of a traffic fine is very closely analogous to a plea of nolo contendere which, translated from Latin, means simply 'I will not contest it.'"); Miss. Atty. Gen., Opinions Div., Letter to the Office of the State Auditor, July 23, 2009 (approving the form and content of a "Uniform Traffic Ticket" advising that payment of the fine by mail "shall be tantamount to entry of a plea of nolo contendere"), http://www.osa.ms.gov/downloads/uniformtraffictickets09.pdf; *see also* M.R.E. 410 ("A plea of nolo contendere" "is not, in any civil or criminal proceeding, admissible against the defendant who made the plea . . . .").

[6] *See, e.g.*, *Williams*, 860 S.W.2d at 856-57.

12

*v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007) (applying Fed. R. Evid. 403); *Whitehead ex rel. Whitehead v. K Mart Corp.*, 173 F. Supp. 2d 553, 559 (S.D. Miss. 2000) (same). It permits the exclusion of relevant evidence based on "unfair prejudice" *only* if the evidence's "probative value is *substantially outweighed* by the danger of unfair prejudice." M.R.E. 403 (emphasis added). Even then, exclusion is permissive ("may"), not mandatory. That decision is committed to the broad discretion of the trial judge, and our standard of review is highly deferential. *See Jenkins v. State*, 75 So. 3d 49, 54-55 (¶15) (Miss. Ct. App. 2011). We find no abuse of discretion in this case.

¶24. Finally, Owens's argument that reference to the ticket should have been prohibited under Rule 609 misapprehends the rule and the use to which Wilburn's payment of the ticket was put in this case. Rule 609(a) governs the use of prior convictions "*[f]or the purpose of attacking the character for truthfulness of a witness*." M.R.E. 609 (emphasis added). The ticket was not used to attack Wilburn's general character for truthfulness—no one would argue that she was a liar because she failed to yield. Rather, her payment of the ticket was used specifically to contradict and impeach her trial testimony that she acted prudently and carefully in proceeding into the intersection.[7]

**CONCLUSION**

¶25. Wilburn's payment of a fine for failure to yield was properly used to impeach her

---

[7] *See Harris*, 878 So. 2d at 98 (Southwick, P.J., dissenting) ("Five bases for attacking witness credibility are generally identified: (1) prior inconsistent statement, (2) witness character, (3) bias, (4) contradictions of the testimony through other evidence, and (5) ability of witness to perceive, recall or narrate."); *accord* Parham Williams, *Williams on Mississippi Evidence* § 6.29, at 6-45 (2013-14 ed.).

testimony that she was not negligent and that Taylor was the cause of the wreck. Any additional use of the ticket caused no marginal prejudice when considered in the context of all the evidence presented at trial. Accordingly, it was harmless, even assuming that there was any error (a point which we do not decide).

¶26. **THE JUDGMENT OF THE CIRCUIT COURT OF TALLAHATCHIE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**