WILSON, J., FOR THE COURT:
 

 ¶ 1. Following a jury trial in the Lowndes County Circuit Court, Lori Griffin was convicted of aggravated assault and sentenced to twenty years in the custody of the Mississippi Department of Corrections (MDOC) with four years suspended and four years of post-release supervision. Through appointed appellate counsel, Griffin challenges two of the trial court's evidentiary rulings and argues that there is insufficient evidence to support the conviction or, alternatively, that the jury's verdict was against the weight of the evidence. In a pro se brief, Griffin raises additional evidentiary issues, alleges ineffective assistance of counsel at trial, and argues that her sentence violates the Eighth Amendment to the United States Constitution. We find no error and affirm Griffin's conviction and sentence.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Lori Griffin rented an apartment in Columbus in July 2009. Dean Loftis, a local realtor, managed the property for Griffin's landlord. In December 2009, the heat went out in Griffin's apartment, and Loftis loaned Griffin a space heater to use until the heat could be repaired. Griffin also tried to use her kitchen oven to heat the apartment, but she forgot that she had left a pizza box in the oven. The pizza box caught fire and damaged the oven. Between 5:30 and 6 p.m. on Friday, December 11, 2009, Griffin told Loftis that the pilot light on her water heater had been out since Tuesday, although she had not reported the problem to Loftis previously. Loftis told Griffin that her maintenance man was out of town but that she would send him to the apartment as soon as he returned after lunch the following day. As promised, the maintenance man went to Griffin's apartment on Saturday, but when he arrived, Griffin told him that a friend had already fixed the issue for her.
 

 ¶ 3. When Loftis went to her office on Sunday, December 13, 2009, there was a message from Griffin on her answering machine. Griffin had left the message on Saturday morning and "seemed to be very angry" that the maintenance man had not arrived yet. Loftis decided that she would go see Griffin on Monday to retrieve her space heater and check on the damage to the stove in the apartment. Loftis also wanted to discuss Griffin's voicemail and to try "[t]o have a better rapport with her."
 

 ¶ 4. When Loftis arrived at Griffin's apartment on Monday, she knocked on the door, and Griffin came out onto the porch. Loftis told Griffin that she wanted to retrieve her heater and discuss Griffin's voicemail. They talked briefly on the porch, and then Griffin started to walk back into the apartment. Loftis started to follow
 Griffin inside and had "just put [her] foot on the threshold" when Griffin turned around and said, "Wait, I didn't invite you into my house. You don't come into my house without an invitation." Loftis told Griffin that she also wanted to take a look at the stove, and she said again that she wanted to discuss Griffin's voicemail and why she had left it.
 

 ¶ 5. When Loftis questioned Griffin about the voicemail, Griffin "went into a fit of rage." Griffin "ran out onto the porch and grabbed [Loftis] by her head." Griffin cursed Loftis and told her that she was "going to regret coming here today." Loftis said that she was going to call the police, and Griffin responded that she would not be able to call the police. While Griffin was cursing and threatening Loftis, she was also pulling chunks of hair out of Loftis's head until Loftis's scalp began to bleed. Then Griffin began hitting Loftis and threw her against the wall. Loftis's head hit the wall, and her eyeglasses fell off. Loftis became dizzy, and Griffin threw her down onto the porch. Then Griffin got on top of Loftis.
 
 [1]
 
 Loftis testified, "I was face down on the [porch]. She was on top of me. And she was ... beating me in the head and telling me what she was going to do to me and how I was going to regret coming there and how many times she had done this before."
 

 ¶ 6. Loftis saw her shoe lying on the porch to her side, and she managed to pick it up and strike Griffin with it. Loftis testified, "I [thought] I would try to hit her with my shoe and get her off me long enough for me to run to [my] car." After Loftis hit Griffin with her shoe, she noticed that Griffin's two- or three-year-old son had walked out onto the porch and was holding a phone. Loftis got the phone and tried to call 911, but Griffin knocked the phone out of her hand. Griffin was cut and bleeding where Loftis's shoe had hit her, and her little boy saw the blood and began to cry. Loftis said, "Lori, your little son doesn't need to see this." Griffin responded, "Yes, he does. Yes, he does. He needs to know how to do this." Griffin then told her son, "She's a mean lady. She's a mean lady. Hit her. Hit her." The little boy obeyed and hit Loftis, and Griffin "started laughing [a] wicked laugh because [the little boy] was hitting [Loftis]."
 

 ¶ 7. Griffin then grabbed Loftis by her hair, pulled her back, and made her look at the blood on Griffin's face. Griffin said, "You see now what you've done? ... I've got to kill you." And then Griffin hit Loftis in the eye with a closed fist, and she said again, "I'm going to have to kill you." According to Loftis, Griffin was on top of her and continued to beat her with her fists, while telling her "that she definitely was going to kill [her]" and that "[s]he had done this before and she knew how to do it and ... get [away] with it." Loftis begged Griffin to stop; she told her that she had osteoporosis and that her ribs were going to break. Griffin responded, "Good. Good." Griffin said again that she was going to kill Loftis and began bouncing up and down on Loftis's back until Loftis felt one of her ribs break.
 

 ¶ 8. Loftis saw her car keys lying on the porch, and she was able to reach them and cause her car horn to honk several times. At this point, a friend of Griffin's, "Matt," walked up onto the porch. Griffin said to him, "Hi, Matt. I'm going to kill this woman." Matt did not do anything to stop Griffin, and Griffin "started choking [Loftis] so hard that [Loftis] thought [her] eyes
 were going to pop out." Loftis begged Matt to make Griffin stop, and Matt finally said, "Lori, don't kill her." But Griffin responded, "I don't have an option. I've got to kill her. She'll go to the cops and I'll go to jail and my kid will go back to the reservation." Matt eventually persuaded Griffin that Loftis would not "go to the cops" because he would "take care of her" if she tried to do so. Griffin eventually agreed to allow Loftis to leave after Loftis promised that she would not go to the police. Griffin told Matt that she was "making a mistake by not killing [Loftis]." Griffin also stomped on Loftis's eyeglasses and threw them into the street. Matt retrieved Loftis's broken eyeglasses and car keys and gave them to her so that she could leave.
 

 ¶ 9. Loftis drove home, and her husband called the police. A police officer came to her house and then called the paramedics. The paramedics responded, insisted that Loftis needed to go to the hospital, and took her to the hospital in an ambulance. Doctors ordered an MRI to check for head injuries ; examined her neck, which was red and bruised; and x-rayed her ribs. Loftis had in fact broken a rib. Loftis also had bruises on her arms and shoulders and bruises, cuts, and blood on her face and scalp, and a black eye.
 

 ¶ 10. Griffin testified to a very different version of events. She said that there were many problems with her apartment and that Loftis did not respond promptly to her calls. She testified that Loftis came to her apartment at 8:30 a.m. on Monday, December 14, 2009, and began "banging on the front door," "screaming at the top her lungs," and demanding to talk to Griffin "about that nasty message." Griffin testified that she was making her son breakfast at the time and was wearing only a sports bra and blue jeans. According to Griffin, after she opened the door, Loftis followed her back into her kitchen without her permission. Griffin claimed that when she asked Loftis to leave, Loftis said, "I'll come in whenever I like .... This is how we do it in the south." Griffin testified that she then tried to call 911, but Loftis grabbed her hand and knocked the phone away from her. Griffin testified that when she bent down to pick up the phone, Loftis "took off her shoe and started hitting [Griffin] in the head with it."
 

 ¶ 11. Griffin testified that her "fight and flight responses just kicked in" and she was "in survival mode." She "sprang up and got [Loftis] by her shoulders," she pushed Loftis back to the door, and both women tripped and fell out onto the front porch. Griffin testified that she sat on top of Loftis on the front porch, but she claimed that Loftis tried to hit her again with the shoe and tried to stab her with car keys. Griffin testified that her son was crying, and she tried to tell him to go back inside the apartment. Griffin testified that Loftis next tried to "grab [her] son"-although Griffin acknowledged that she was still sitting on top of Loftis at this point. Griffin claimed that Loftis actually managed to grab her son by his shirt, and Griffin responded by hitting Loftis in the face and head.
 

 ¶ 12. Griffin testified that her neighbor and acquaintance, Matthew Evans, heard her screaming for help. She testified that Evans took her son inside the apartment and then came back outside. Griffin testified that she let Loftis get up, and Loftis said she "just want[ed] to go and forget [the] day ever happened." According to Griffin, Loftis continued to demand her space heater, so Griffin brought the heater outside and left it next to Loftis's car. Loftis then departed. Griffin called 911, and the police responded. She told the police that she did not want to press charges unless Loftis did. Griffin then
 went to the hospital. She had a single cut on her head, which was about half an inch in length. A doctor closed the cut with two medical staples. The doctor noticed a bruise on one of Griffin's fingers but no other injuries.
 

 ¶ 13. Griffin was indicted in May 2010 and released on bond. She subsequently absconded to North Carolina. In December 2011, a bench warrant was issued for her arrest after she failed to appear for trial. She remained on the lam until she was apprehended in Alabama and returned to Mississippi to stand trial. Her case proceeded to trial in March 2013. Her first trial ended in a hung jury and a mistrial. At her second trial, the jury found her guilty of aggravated assault. The circuit court sentenced her to twenty years in MDOC custody, with four years suspended and four years of post-release supervision, and ordered her to pay a $1,000 fine, restitution, and court costs.
 

 ¶ 14. After Griffin was sentenced, her trial counsel filed a motion for a "directed verdict" or a new trial, which the circuit court denied. Griffin then informed her trial counsel that she did not want to appeal. On March 28, 2013, the circuit court held a hearing and questioned Griffin to ensure that she understood that she had a right to appeal and a right to appointed counsel on appeal. Griffin confirmed that she understood this, that she had consulted with trial counsel, and that she did not want to appeal. The circuit court found that Griffin had knowingly, voluntarily, and intelligently waived her right to appeal.
 

 ¶ 15. Almost six months later, on September 17, 2013, Griffin filed a pro se, fill-in-the-blank "Motion for Appointment of Appellate Counsel and for Other Relief" in which she requested permission to file an out-of-time appeal pursuant to Rule 4 of the Mississippi Rules of Appellate Procedure. The circuit court denied her request. The court noted that it had "no issues with, or objections to, [Griffin] seeking an out-of-time appeal," but the court no longer had jurisdiction to grant her request under Rule 4.
 
 See
 
 M.R.A.P. 4(g). The court instructed Griffin that "the proper remedy" would be for her "to seek leave to file an out-of-time appeal from the Supreme Court of Mississippi under Rule 2(c) of the Mississippi Rules of Appellate Procedure."
 

 ¶ 16. Griffin followed the circuit court's instructions and filed a motion in the Supreme Court requesting leave under Rule 2(c) to file an out-of-time appeal. A panel of the Supreme Court found that Griffin's "motion should be dismissed without prejudice to [her] right to seek an out-of-time appeal by filing a petition for post-conviction collateral relief in the trial court."
 
 Griffin v. State
 
 , No. 2014-M-00688 (Miss. June 20, 2014) (citing
 
 Miss. Code Ann. § 99-39-5
 
 (1)(i) (Rev. 2015) ).
 

 ¶ 17. Griffin then returned to the circuit court and filed a pro se, fill-in-the-blank "Post-Conviction Petition for Out of Time Appeal, Appointment of Appellate Counsel, and for Other Relief." Griffin's petition was filed in a separate case with a civil cause number. Griffin's certificate of service shows that she served the district attorney. On September 4, 2014, without requesting a response from the State, the circuit court granted Griffin's motion for an out-of-time appeal and directed her to file a notice of appeal within twenty days. The court directed the circuit clerk to send a copy of its order "to all parties," and the circuit clerk's records show that a copy was sent to the district attorney. Griffin then filed a notice of appeal in her criminal case on September 16, 2014.
 

 ¶ 18. The Office of State Public Defender, Indigent Appeals Division, was appointed to represent Griffin on appeal. Griffin's appointed counsel argues that (1) the State
 improperly introduced evidence of Loftis's reputation for having a character for truthfulness, (2) the trial court erred by allowing the State to cross-examine Griffin about having put her child up for adoption and by not allowing Griffin to explain her reason for doing so, (3) the evidence was insufficient to convict Griffin of aggravated assault, and (4) the jury's verdict was against the overwhelming weight of the evidence.
 
 See
 
 Parts II-IV,
 
 infra.
 
 In a pro se supplemental brief, Griffin argues that (1) a prior written statement by Loftis should have been admitted into evidence, (2) the trial court erred by admitting "distorted" black-and-white photos into evidence, (3) her trial counsel should have demanded a speedy trial, and (4) her sentence is cruel and unusual punishment and violates the Eighth Amendment to the United States Constitution.
 
 See
 
 Parts V-VIII,
 
 infra.
 
 We address these issues in turn below, find no reversible error, and affirm Griffin's conviction and sentence.
 

 ANALYSIS
 

 I. This Court has jurisdiction to consider Griffin's appeal.
 

 ¶ 19. After the parties filed their briefs on appeal, this Court ordered supplemental briefing on the questions whether the circuit court properly granted Griffin's motion for an out-of-time appeal and whether this Court has jurisdiction to consider the appeal. The State argues that the circuit court erred by granting Griffin's motion-and that this Court lacks appellate jurisdiction-because Griffin did not show that she failed to perfect a timely appeal "through no fault of her own."
 

 ¶ 20. The State's argument would have been a valid basis for opposing Griffin's motion for post-conviction relief. The Uniform Post-Conviction Collateral Relief Act permits a prisoner to file "a motion for an out-of-time appeal if the person claims ... [t]hat he is entitled to an out-of-time appeal."
 
 Miss. Code Ann. § 99-39-5
 
 (1)(i). However, "[t]hat remedy is able to protect inmates who
 
 through no fault of their own
 
 have not had an appeal of their underlying conviction."
 
 DeLoach v. State
 
 ,
 
 890 So.2d 934
 
 , 936 (¶ 7) (Miss. Ct. App. 2004) (emphasis added; quotation marks omitted). "[A] defendant seeking an out-of-time appeal must, by a preponderance of the evidence, demonstrate that he asked his attorney to appeal within the time allowed but that the attorney failed to appeal,
 
 and such failure was not the defendant's fault
 
 ."
 
 Arnold v. State
 
 ,
 
 93 So.3d 908
 
 , 912 (¶ 10) (Miss. Ct. App. 2012) (emphasis added). Thus, a prisoner generally is not entitled to an out-of-time appeal when, as in this case, she knowingly and voluntarily waives the right to appeal.
 
 See
 

 Davis v. State
 
 ,
 
 36 So.3d 456
 
 , 457-58, 460-61 (¶¶ 3, 12-15) (Miss. Ct. App. 2010).
 

 ¶ 21. However, the circuit court granted Griffin an out-of-time appeal in a final judgment entered in a separate civil, post-conviction action.
 
 See
 

 Miss. Code Ann. § 99-39-23
 
 (6)
 

 (Rev. 2015) ("[An] order [granting or denying post-conviction relief] is a final judgment and shall be conclusive until reversed."). The State could have moved for reconsideration or appealed from the judgment in the post-conviction case.
 
 [2]
 

 See
 

 Miss. Code Ann. § 99-39-25
 
 (1) (Rev. 2015) ("A final judgment entered under [the Uniform Post-Conviction Collateral Relief Act] may be reviewed by the supreme court of Mississippi on appeal brought either by the prisoner
 
 or the state
 
 on such terms and conditions as are provided for in criminal cases." (emphasis added) ). However, the State did not appeal, so the judgment in the post-conviction case became final. Moreover, the State does not argue that the judgment in the post-conviction case is void.
 
 [3]
 
 Therefore, there is no basis for this Court to look behind that judgment. The final judgment in the post-conviction case gives this Court jurisdiction to consider Griffin's out-of-time appeal from her criminal conviction.
 

 II. Griffin waived any objection to testimony about Loftis's reputation for having a character for truthfulness.
 

 ¶ 22. Griffin argues that the circuit court erred by permitting six witnesses to testify in rebuttal that Loftis had a reputation for having a truthful character. Griffin argues that it was error to admit this testimony because Loftis's character for truthfulness was never attacked. The State responds that this testimony was properly admitted in response to Griffin's accusation that the police "coached" Loftis by telling her that Griffin previously had been charged with aggravated assault. Griffin further accused Loftis of tailoring and fabricating parts of her statement to police based on their "coaching." Griffin leveled these accusations in a pretrial letter to one of the circuit judges, and the State cross-examined Griffin about the letter and introduced it into evidence at trial.
 

 ¶ 23. Mississippi Rule of Evidence 608(a) provides that "[a] witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character." M.R.E. 608(a). However, "evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked."
 

 Id.
 

 ;
 
 see
 

 Brent v. State
 
 ,
 
 929 So.2d 952
 
 , 957 (¶¶ 11-13) (Miss. Ct. App. 2005).
 

 ¶ 24. "A trial court's admission of testimony is reviewed for an abuse of discretion."
 
 Chaupette v. State
 
 ,
 
 136 So.3d 1041
 
 , 1045 (¶ 7) (Miss. 2014). "We give great deference to the discretion of the trial judge, and unless we conclude that the [decision] was arbitrary and clearly erroneous, amounting to an abuse of discretion, the trial judge's decision will stand."
 

 Id.
 

 (quotation marks, brackets omitted). "Moreover, we may reverse a case only if the admission or exclusion of evidence results in prejudice and harm or adversely affects a substantial right of a party."
 

 Id.
 

 (comma and quotation marks omitted).
 

 ¶ 25. Having reviewed the testimony of the six witnesses at issue, we find that Griffin never objected to the introduction of evidence that Loftis had a reputation for having a character for truthfulness. Griffin did not object when the prosecution asked the first of the six witnesses, Tina Dodd, about Loftis's reputation for
 having a character for truthfulness.
 
 [4]
 
 Griffin did object when the next witness, Valeria Anthony, began to testify about her specific interactions with Loftis. However, when the prosecutor rephrased the question, and Anthony confined her answer to Loftis's reputation for having a character for truthfulness, Griffin made no objection. Next, Griffin did not object to Rhonda Sanders's testimony about Loftis's reputation for having a character for truthfulness. Griffin did object when the fourth of these witnesses, Joe Hollowell, testified simply that Loftis is "very truthful"; however, following an off-the-record bench conference, the prosecutor rephrased her question, and Hollowell testified without objection that Griffin had a good reputation for having a character for truthfulness. The final two witnesses, Geri Holliman and Edward Wallington, offered similar testimony without any objection from Griffin. Thus, during the relevant testimony of these six witnesses, Griffin made only two objections to the form of the prosecutor's question or the witness's answer. She never objected that testimony about Loftis's reputation for having a truthful character was altogether improper and inadmissible.
 

 ¶ 26. Our Supreme Court has held that "an objection on one or more specific grounds constitutes a waiver of all other grounds."
 
 Smith v. State
 
 ,
 
 986 So.2d 290
 
 , 295 (¶ 13) (Miss. 2008) (quotation marks omitted). "[A]n objection cannot be enlarged in the reviewing court to embrace [issues] not complained of at trial."
 

 Id.
 

 "This Court cannot find that a trial judge committed reversible error on a matter not brought before him or her to consider."
 

 Id.
 

 In this case, Griffin did not object at all when the State first offered reputation-for-character-for-truthfulness testimony through Dodd, and her only later objections were to the form of a particular question or answer. Griffin
 
 never
 
 objected at trial "on the ground [she] raises on appeal"; therefore, she "waived any argument" that reputation-for-character-for-truthfulness testimony was inadmissible under Rule 608(a).
 
 Smith
 
 ,
 
 986 So.2d at 295
 
 (¶ 14).
 

 III. The trial court did not abuse its discretion by allowing full cross-examination and impeachment of Griffin or by precluding Griffin from disclosing her possible sentence to the jury.
 

 ¶ 27. On direct examination, in the course of explaining why she had jumped bond, Griffin specifically testified that in 2012 she had moved to Cullman, Alabama, with both of her "children," including her younger son. Griffin told the jury that she moved to Cullman in part because "Bloomberg Business Week" had listed that city "as the number one place to raise children." In point of fact, Griffin did not move to Cullman with both of her children or her younger son. She put the younger son up for adoption in 2011,
 
 before she moved to Cullman
 
 . On cross-examination, the State attempted to impeach Griffin by questioning her about the fact of her younger son's adoption. Griffin objected on grounds of relevance and prejudice, but the trial judge overruled the objection. The trial judge found that Griffin had "opened the door to this line of questioning" through her testimony on direct. The trial judge also found, under Mississippi Rule of Evidence 403, that Griffin's "credibility" was of "paramount" importance to the case and that "any prejudicial effect [was] outweighed
 substantially by the probative value" of the evidence. The judge did caution the State "to be careful about going too far afield."
 

 ¶ 28. On appeal, Griffin argues that the trial judge erred by allowing the State to cross-examine her about the adoption. She contends that this line of questioning should have been prohibited under Rule 403. We disagree.
 

 ¶ 29. "Mississippi allows wide-open cross-examination of any matters affecting the credibility of the witness."
 
 Brown v. State
 
 ,
 
 690 So.2d 276
 
 , 292 (Miss. 1996) (quoting
 
 Tillis v. State
 
 ,
 
 661 So.2d 1139
 
 , 1149 (Miss. 1995) );
 
 accord
 

 Keller v. State
 
 ,
 
 138 So.3d 817
 
 , 840 (¶ 34) (Miss. 2014) ; M.R.E. 611(b). "[A] trial court's rulings on the extent of cross-examination will be reversed only when an abuse of discretion is shown."
 
 Byrom v. State
 
 ,
 
 863 So.2d 836
 
 , 862 (¶ 81) (Miss. 2003). Moreover, " 'Rule 403's scope is narrow,' as 'it is an extraordinary measure that should be used very sparingly.' "
 
 Owens v. Kelly
 
 ,
 
 191 So.3d 738
 
 , 745 (¶ 23) (Miss. Ct. App. 2015) (quoting
 
 United States v. Fields
 
 ,
 
 483 F.3d 313
 
 , 354 (5th Cir. 2007) ). Rule 403 permits the exclusion of relevant evidence based on "unfair prejudice"
 
 only if
 
 the evidence's "probative value is
 
 substantially outweighed
 
 by a danger of" unfair prejudice. M.R.E. 403 (emphasis added);
 
 see
 

 Owens
 
 ,
 
 191 So.3d at 745
 
 (¶ 23).
 

 ¶ 30. In this case, the trial judge did not abuse his discretion. The State's cross-examination directly addressed a "matter[ ] affecting [Griffin's] credibility,"
 
 Brown
 
 ,
 
 690 So.2d at 292
 
 , as it revealed a clear lie in her testimony on direct. Griffin interjected the issue into the case through her self-serving-and at least partially false-testimony about her reasons for moving to Alabama. Griffin did not have to testify about moving to Alabama, but once she did, she opened the door to cross-examination about her truthfulness on that subject. Nor can we say that the trial judge abused his discretion in applying Rule 403. As the trial judge found, Griffin's "credibility" was a "paramount" issue at trial, and the probative value of this impeachment was not substantially outweighed by any danger of unfair prejudice. Griffin's argument on this issue is without merit.
 

 ¶ 31. Griffin also argues that the trial judge abused his discretion by precluding her from testifying that she put her son up for adoption because she was facing a lengthy prison sentence if convicted. After the trial judge ruled that the State could cross-examine Griffin regarding the adoption, Griffin testified as follows:
 

 Q. Ms. Griffin, isn't it true that in September of 2011 you gave up your younger son for adoption?
 

 A. I did due to the fact that I'm looking at 20 years if I'm convicted here, yes, ma'am. I did not want that child ... becoming attached to me.
 

 The judge interrupted Griffin and instructed the jury to disregard this testimony because the jury would not decide Griffin's sentence and should not consider her sentence in rendering a verdict. The judge then excused the jury from the courtroom and admonished Griffin, outside the presence of the jury, not to testify about her potential sentence. On appeal, Griffin argues that this limitation on her testimony was error.
 

 ¶ 32. We disagree. As an initial matter, Griffin failed to preserve the issue for appellate review. After the jury was excused, Griffin's attorney did not argue that she should be allowed to testify about her potential sentence. In fact, when the trial judge correctly stated that the jury was "not even to know potential sentences,"
 

 Griffin's attorney stated, "I understand, Judge. I totally agree with you."
 

 ¶ 33. Moreover, procedural bar notwithstanding, the trial judge's ruling was correct. Griffin's potential sentence was not a proper consideration for the jury.
 
 See
 

 Marks v. State
 
 ,
 
 532 So.2d 976
 
 , 983-84 (Miss. 1988) ("[T]he jury should have no concern with the quantum of punishment to be imposed .... The question of punishment is categorically unrelated to [what] the verdict should be ....");
 
 see also
 

 Roach v. State
 
 ,
 
 116 So.3d 126
 
 , 136 (¶ 32) (Miss. 2013) (Kitchens, J., dissenting) ("The severity or leniency of a defendant's possible sentence is purposely withheld from juries exactly because of its considerable potential to influence their verdicts."). The trial judge did not abuse his discretion in permitting full cross-examination on issues relevant to Griffin's credibility; nor did the trial judge abuse his discretion by cutting off Griffin's testimony about her potential sentence.
 

 IV. Griffin's challenges to the sufficiency and weight of the evidence are procedurally barred and without merit.
 

 ¶ 34. Griffin next argues that the State presented insufficient evidence to convict her of aggravated assault or, in the alternative, that she is entitled to a new trial because the jury's verdict is against the overwhelming weight of the evidence. As to both of these issues, Griffin advances only a very specific and narrow claim that the State failed to prove that Loftis suffered "serious bodily injury."
 
 Miss. Code Ann. § 97-3-7
 
 (2)(a) (Rev. 2014).
 

 ¶ 35. "When this Court reviews the sufficiency of evidence supporting a guilty verdict, we view the evidence in the light most favorable to the State and decide if rational jurors could have found the State proved each element of the crime."
 
 Lenoir v. State
 
 ,
 
 222 So.3d 273
 
 , 279 (¶ 25) (Miss. 2017). "We are not required to decide-and in fact we must refrain from deciding-whether we think the State proved the elements. Rather, we must decide whether a reasonable juror could rationally say that the State did."
 
 Poole v. State
 
 ,
 
 46 So.3d 290
 
 , 293-94 (¶ 20) (Miss. 2010).
 

 ¶ 36. We review the trial judge's decision denying a new trial for an abuse of discretion.
 
 Little v. State
 
 ,
 
 233 So.3d 288
 
 , 292 (¶ 21) (Miss. 2017). "We do not reweigh evidence," "assess the witnesses' credibility," or "resolve conflicts between evidence."
 

 Id.
 

 at 289
 
 (¶ 1). "Those decisions belong solely to the jury."
 

 Id.
 

 On appeal, we "view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice."
 

 Id.
 

 ¶ 37. Griffin's indictment charged that she "did unlawfully, willfully, and feloniously, purposely and knowingly cause serious bodily injury to Dean Loftis, by choking her and hitting her with her fist, breaking a rib, without authority of law and not in necessary self defense." Consistent with the indictment, the court instructed the jury that the State was required to prove beyond a reasonable doubt that Griffin "cause[d] serious bodily injury to Dean Loftis by hitting her and breaking her rib."
 

 ¶ 38. On appeal, Griffin argues that the State failed to prove that Loftis suffered any "serious bodily injury," as that term is defined by Mississippi law. For purposes of the aggravated assault statute, "serious bodily injury" means "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss
 or impairment of the function of any bodily member or organ."
 
 Rickman v. State
 
 ,
 
 150 So.3d 983
 
 , 986 (¶ 12) (Miss. Ct. App. 2014) (emphasis omitted) (quoting
 
 Fleming v. State
 
 ,
 
 604 So.2d 280
 
 , 292 (Miss. 1992) ).
 

 ¶ 39. We begin by noting that Griffin failed to raise this issue in the trial court. After the State rested its case-in-chief, Griffin moved for a directed verdict, but she simply asserted, without elaboration, that "the State hasn't met its burden by beyond a reasonable doubt." The trial judge denied Griffin's motion, and Griffin did not renew the motion at the close of the evidence. Nor did Griffin request a jury instruction defining "serious bodily injury" or a lesser-included-offense instruction on simple assault.
 
 [5]
 
 In closing argument, the assistant district attorney argued that this issue-whether Loftis suffered a serious bodily injury-was "not in dispute," and Griffin's counsel did not address the issue at all. Finally, Griffin's post-trial motion for a "directed verdict" or a new trial included only a general assertion that "[t]he verdict was against the overwhelming weight of the evidence."
 

 ¶ 40. Even if we assume that Griffin's post-trial motion for a "directed verdict" or a new trial was sufficient to preserve
 
 some
 
 challenge to the weight or sufficiency of the evidence,
 
 [6]
 
 Griffin never raised the specific issue that she now raises on appeal. Our Supreme Court has held that "[a] motion for a directed verdict on the grounds that the state has failed to make out a prima facie case must state specifically wherein the state has failed to make out a prima facie case. Motions for a directed verdict must be specific and not general in nature."
 
 Sheffield v. State
 
 ,
 
 749 So.2d 123
 
 , 126 (¶ 10) (Miss. 1999) (quoting
 
 Banks v. State
 
 ,
 
 394 So.2d 875
 
 , 877 (Miss. 1981) ). Post-trial motions for a judgment notwithstanding the verdict (JNOV) or a new trial require the same specificity.
 

 Id.
 

 ;
 
 accord
 

 Thomas v. State
 
 ,
 
 195 So.3d 843
 
 , 850 n.4 (Miss. Ct. App. 2016) ;
 
 Carey v. State
 
 ,
 
 80 So.3d 131
 
 , 135 (¶ 12) (Miss. Ct. App. 2012) ;
 
 Riley v. State
 
 ,
 
 11 So.3d 751
 
 , 753-54 (¶ 10) (Miss. Ct. App. 2008). In
 
 Sheffield
 
 , after he was convicted of burglary of a dwelling, the defendant argued on appeal that the State failed to prove that the building he burgled was a "dwelling."
 
 Sheffield
 
 ,
 
 749 So.2d at 126
 
 (¶ 10). Our Supreme Court held that he was "procedurally barred from raising this issue for the first time on appeal" because his motions for a directed verdict and JNOV or a new trial "failed to address the 'dwelling' element."
 

 Id.
 

 Therefore, the Court refused to consider the argument.
 

 Id.
 

 ¶ 41. The same is true in this case. Griffin's motion for a directed verdict and her post-trial motion both completely "failed to address the ['serious bodily injury'] element."
 

 Id.
 

 Therefore, the issue is "procedurally barred" on appeal.
 

 Id.
 

 ¶ 42. But even if Griffin had not waived this issue, we would still affirm her conviction. In
 
 Truelove v. State
 
 ,
 
 78 So.3d 363
 
 (Miss. Ct. App. 2011), the defendant was convicted of two counts of aggravated domestic violence, which is aggravated assault committed against specific victims, including spouses, girlfriends, and others.
 
 See
 

 id.
 

 at 363, 368
 
 (¶¶ 1, 24) ;
 
 Miss. Code Ann. § 97-3-7
 
 (4) (Rev. 2014). Truelove beat his live-in girlfriend on two different occasions. In the first assault, "[s]he suffered
 a broken nose and concussion, and she had numerous bruises and scratches all over her body."
 
 Truelove
 
 ,
 
 78 So.3d at 364
 
 (¶ 2). In the second assault, she "suffered a broken rib, a loose tooth, and bruises and cuts all over her body."
 

 Id.
 

 at (¶ 3). On appeal, Truelove argued that the State failed to prove that the victim suffered a "serious bodily injury" on either occasion.
 

 Id.
 

 at 367
 
 (¶ 22). This Court rejected his argument.
 

 Id.
 

 at 368
 
 (¶ 24). As to the first assault, we stated that "a broken nose has been found to constitute a serious bodily injury," and we held that "[p]roof of the broken nose
 
 alone
 
 was enough to support a claim of serious bodily injury."
 

 Id.
 

 at (¶ 25) (emphasis added). As to the second assault, we held that the State proved serious bodily injury based on the victim's testimony and other evidence of injuries and significant bruising around her ribs, which caused pain and difficulty breathing.
 

 Id.
 

 at 368-69
 
 (¶¶ 26-27). We held that this was sufficient proof of serious bodily injury even without specific "medical proof" that the victim "suffered a broken rib from the second altercation."
 

 Id.
 

 ¶ 43. There is no material distinction between
 
 Truelove
 
 and this case. As to the first assault in
 
 Truelove
 
 , we said that "the broken nose alone was enough to support a claim of serious bodily injury."
 

 Id.
 

 at 368
 
 (¶ 25). We see no basis, for purposes of the aggravated assault statute, for distinguishing a broken nose from a broken rib. Likewise, there is no basis for distinguishing the broken rib in the second assault in
 
 Truelove
 
 from the broken rib suffered by Loftis in this case. Moreover, the descriptions of the assaults and resultant injuries in
 
 Truelove
 
 are comparable to the evidence and injuries involved in this case.
 
 See generally
 

 id.
 

 at 364-66, 368-69
 
 (¶¶ 6-15, 25-27).
 

 ¶ 44. "[L]ike cases ought to be decided alike."
 
 Thompson v. State
 
 ,
 
 230 So.3d 1044
 
 , 1055 (¶ 36) (Miss. Ct. App. 2017) (quoting
 
 State ex rel. Moore v. Molpus
 
 ,
 
 578 So.2d 624
 
 , 634 (Miss. 1991) ),
 
 cert. denied
 
 ,
 
 229 So.3d 121
 
 (Miss. 2017). Therefore, as in
 
 Sheffield
 
 ,
 
 supra
 
 , we hold that Griffin's argument is "procedurally barred" because she completely "failed to address the ['serious bodily injury'] element" in her motions and arguments in the trial court.
 
 Sheffield
 
 ,
 
 749 So.2d at 126
 
 (¶ 10). In addition, as in
 
 Truelove
 
 , we hold that the State presented sufficient evidence of serious bodily injury to sustain the conviction.
 
 [7]
 

 V. The trial judge did not err by not admitting Loftis's written statement into evidence; nor did trial counsel provide ineffective assistance by not attempting to introduce the statement.
 

 ¶ 45. An investigator with the Columbus Police Department interviewed Loftis the day after the assault and drafted a statement based on the interview, which Loftis reviewed and signed. Griffin's attorney briefly used the statement to cross-examine Loftis, asking her whether she recalled telling the investigator that "blood was pouring from Ms. Griffin's head." However, Griffin's lawyer did not attempt to introduce the statement into evidence. In her pro se supplemental appellate brief, Griffin argues that the trial judge should have admitted the statement into evidence sua sponte. She also argues that her trial counsel's failure to introduce
 the statement constitutes ineffective assistance of counsel.
 

 ¶ 46. Griffin's arguments are without merit. To begin with, there is nothing to indicate that the statement would have been helpful to Griffin's case.
 
 See
 

 Havard v. State
 
 ,
 
 928 So.2d 771
 
 , 781 (¶ 8) (Miss. 2006) (holding that an ineffective assistance claim fails if there is no showing that counsel's alleged errors prejudiced the defendant). In addition, trial counsel's decisions as to whether to seek to introduce certain evidence generally and presumptively fall within the scope of reasonable trial strategy-and, therefore, are not a basis for an ineffective assistance claim.
 
 See, e.g.
 
 ,
 
 Havard v. State
 
 ,
 
 86 So.3d 896
 
 , 904 (¶ 27) (Miss. 2012) ;
 
 Chamberlin v. State
 
 ,
 
 55 So.3d 1046
 
 , 1053 (¶ 21) (Miss. 2010). In this case, defense counsel's decision not to attempt to introduce the victim's written statement-which incriminated Griffin-surely was reasonable trial strategy. And to the extent that Griffin alleges error by the trial judge, there simply was no reason for the trial judge to admit the statement into evidence sua sponte.
 

 VI. Griffin cannot complain about evidence that she introduced at trial.
 

 ¶ 47. Griffin's pro se supplemental brief next advances an argument about some black-and-white photographs of her, Loftis, and the crime scene that were admitted into evidence at trial. The nature of the argument is not entirely clear. On appeal, Griffin argues that the photos were misleading. However, Griffin, not the State, offered these photos into evidence. The State offered only color photos. Griffin's claim is procedurally barred and without merit because she did not raise this issue in the trial court. In fact, she introduced the evidence about which she now complains.
 
 See, e.g.
 
 ,
 
 Smith
 
 ,
 
 986 So.2d at 295
 
 (¶ 13) ("This Court cannot find that a trial judge committed reversible error on a matter not brought before him or her to consider.");
 
 Graves v. State
 
 ,
 
 216 So.3d 1152
 
 , 1159 (¶ 15) (Miss. 2016) ("A defendant cannot complain on appeal of alleged errors [that she] invited or induced." (quoting
 
 Galloway v. State
 
 ,
 
 122 So.3d 614
 
 , 645 (¶ 87) (Miss. 2013) ).
 

 VII. Griffin's speedy trial/ineffective assistance claim is dismissed without prejudice.
 

 ¶ 48. Griffin's pro se brief next argues that her trial counsel provided ineffective assistance by not demanding a speedy trial. Griffin alleges that she lost touch with a key witness, Matthew Evans, because of the passage of time.
 

 ¶ 49. Ordinarily, claims of ineffective assistance should be raised in a motion for post-conviction relief, not on direct appeal. As this Court has summarized:
 

 It is unusual for this Court to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal because there is usually insufficient evidence within the record to evaluate the claim. Because an appellate court is limited to the trial record on direct appeal, issues of ineffective assistance of counsel are more appropriate in a motion for post-conviction relief. We may address such claims on direct appeal only if the issues are based on facts fully apparent from the record. If the record is not sufficient to address the claims on direct appeal, the Court should dismiss the claims without prejudice, preserving the defendant's right to raise the claims later in a properly filed motion for post-conviction relief.
 

 Johnson v. State
 
 ,
 
 191 So.3d 732
 
 , 735-36 (¶ 13) (Miss. Ct. App. 2015) (citations, quotation marks, and alterations omitted),
 
 cert. denied
 
 ,
 
 202 So.3d 209
 
 (Miss. 2016),
 
 cert. denied
 
 , --- U.S. ----,
 
 137 S.Ct. 670
 
 ,
 
 196 L.Ed.2d 556
 
 (2017).
 

 ¶ 50. Part of the delay in bringing this case to trial clearly cannot be blamed on Griffin's lawyer. As discussed above, Griffin jumped bail, failed to appear for trial in December 2011, and absconded to North Carolina and later Alabama. She was returned to Mississippi in November 2012 and tried in March 2013. Any delay caused by Griffin's flight and failure to appear is her fault alone and cannot give rise to a speedy trial or ineffective assistance claim.
 
 See
 

 Williams v. State
 
 ,
 
 158 So.3d 309
 
 , 312 (¶ 10) (Miss. 2015).
 

 ¶ 51. However, the record is unclear as to why the trial was delayed prior to Griffin's flight. Griffin was indicted in May 2010, and the court initially set the case for trial in August 2010. The case was then continued five times by agreement, with the last agreed order setting trial for December 2011. The agreed orders are not in the record on appeal, nor is there any specific explanation for the continuances. In addition, there is no evidence to support Griffin's claim that Evans might have offered helpful testimony had the case proceeded to trial sooner. On this record, the usual reasons for not addressing ineffective assistance claims on direct appeal apply. Accordingly, we dismiss this claim without prejudice to Griffin's right to assert the claim in a properly filed motion for post-conviction relief.
 
 Johnson
 
 , 191 So.3d at 736 (¶ 13).
 
 [8]
 

 VIII. Griffin's sentence does not violate the Eighth Amendment to the United States Constitution.
 

 ¶ 52. Finally, Griffin argues that her sentence-twenty years in MDOC custody, with four years suspended and four years of post-release supervision-violates the Eighth Amendment to the United States Constitution.
 
 See
 
 U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."). Griffin discusses several reported aggravated assault cases in which lesser sentences were imposed, and she argues that those cases involved "more heinous" crimes than hers. Griffin also attempts to minimize her culpability, claiming that she had "no intention to do bodily harm" and that Loftis "was the initial aggressor." Obviously, these claims are in direct conflict with Loftis's testimony about the assault, which the jury apparently found credible. Finally, Griffin alleges that the trial judge has a "personal vendetta" against her, citing another aggravated assault case in which the judge imposed a lesser sentence; however, the record contains nothing to support Griffin's allegations about the other case with the lesser sentence.
 

 ¶ 53. Both the United States Supreme Court and the Mississippi Supreme Court have emphasized that "outside the context of capital punishment, successful challenges to the proportionality of a particular sentence will be
 
 exceedingly rare
 
 ."
 
 Barnwell v. State
 
 ,
 
 567 So.2d 215
 
 , 220 (Miss. 1990) (emphasis added; emphasis and brackets omitted) (quoting
 
 Solem v. Helm
 
 ,
 
 463 U.S. 277
 
 , 289-90,
 
 103 S.Ct. 3001
 
 ,
 
 77 L.Ed.2d 637
 
 (1983) ). In
 
 Solem
 
 , the Court discussed three factors that may be relevant to an Eighth Amendment challenge to a prison sentence.
 
 See
 

 Solem
 
 ,
 
 463 U.S. at 290-92
 
 ,
 
 103 S.Ct. 3001
 
 . However, it is necessary to consider those "factors ...
 
 only
 
 when a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality.' "
 

 Thomas v. State
 
 ,
 
 48 So.3d 460
 
 , 479 (¶ 58) (Miss. 2010) (emphasis added) (quoting
 
 Johnson v. State
 
 ,
 
 950 So.2d 178
 
 , 183 (Miss. 2007) );
 
 see
 

 Harmelin v. Michigan
 
 ,
 
 501 U.S. 957
 
 , 1004-05,
 
 111 S.Ct. 2680
 
 ,
 
 115 L.Ed.2d 836
 
 (1991) (Kennedy, J., concurring in part and concurring in the judgment). "Generally, sentences that do not exceed the maximum term allowed by statute will not be considered grossly disproportionate ...."
 
 Thomas
 
 ,
 
 48 So.3d at 479
 
 (¶ 59). And when a sentence is constitutional, "[t]he imposition of a sentence is within the discretion of the trial court, and this Court will not review the sentence, if it is within the limits prescribed by statute."
 
 Reynolds v. State
 
 ,
 
 585 So.2d 753
 
 , 756 (Miss. 1991).
 

 ¶ 54. We cannot say that Griffin's sentence of twenty years in MDOC custody with four years suspended and four years of post-release supervision is "grossly disproportionate."
 
 See, e.g.
 
 ,
 
 Ford v. State
 
 ,
 
 975 So.2d 859
 
 , 869-70 (¶¶ 39-42) (Miss. 2008) (holding that a seventeen-year sentence for aggravated assault does not support an inference of gross disproportionality);
 
 Darnell v. State
 
 ,
 
 202 So.3d 281
 
 , 287 (¶¶ 20-21) (Miss. Ct. App. 2016) (same as to a sentence of twenty years with five years suspended and five years of post-release supervision);
 
 see also
 

 Barnwell
 
 ,
 
 567 So.2d at 219-22
 
 (upholding a fifteen-year sentence for uttering a forgery as a habitual offender although the defendant's only prior convictions were for non-violent felonies). On appeal, Griffin emphasizes that she did not use a deadly weapon or inflict injuries as severe as in some other aggravated assault cases. However, the evidence at trial showed an especially vicious, brutal, and prolonged assault. In addition, Griffin was considerably larger and younger than Loftis. According to Loftis, Griffin repeatedly stated that she was going to kill her, and the evidence suggested that Griffin did not murder Loftis only because Loftis was able to activate her car horn, drawing a neighbor's attention. According to Loftis, Griffin could have ended the assault at any time, but she continued to beat Loftis mercilessly. Griffin's assertion that Loftis was the "initial aggressor" is also unavailing, as there was substantial evidence to the contrary.
 

 ¶ 55. Griffin's sentence was not grossly disproportionate; therefore, it does not violate the Eighth Amendment to the United States Constitution. The sentence imposed was within the limits set by the statute and within the discretion of the sentencing judge.
 

 CONCLUSION
 

 ¶ 56. There is sufficient evidence to support the conviction, the jury's verdict is not against the overwhelming weight of the evidence, and Griffin has not identified any error in the admission or exclusion of evidence. In addition, Griffin's sentence is constitutional and within the limits set by statute. The ineffective assistance claim discussed in Part VII,
 
 supra
 
 , is dismissed without prejudice. Griffin may raise that issue in a properly filed motion for post-conviction relief.
 

 ¶ 57.
 
 AFFIRMED.
 

 LEE, C.J., GRIFFIS, P.J., AND FAIR, J., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. TINDELL, J., CONCURS IN PART AND IN THE RESULT WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY WESTBROOKS, J. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON, GREENLEE AND WESTBROOKS, JJ.
 

 TINDELL, J., CONCURRING IN PART AND IN RESULT:
 

 ¶ 58. I agree with the majority's affirmation of Griffin's conviction and sentence and its well-reasoned determination of the jurisdictional, constitutional, and evidentiary issues. I also agree with the majority's opinion that because Griffin failed to address the serious bodily injury element in her motion for a directed verdict and her post-trial motions, the issue is now procedurally barred. However, unlike the majority, it is my opinion that a reasonable juror, given the appropriate definition of the term "serious bodily injury" as an element of aggravated assault, could rationally say the State did not prove "serious bodily injury" to Loftis.
 

 ¶ 59. "Serious bodily injury" as defined by Mississippi law means "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."
 
 Rickman v. State
 
 ,
 
 150 So.3d 983
 
 , 986 (¶ 12) (Miss. Ct. App. 2014) (emphasis omitted) (quoting
 
 Fleming v. State
 
 ,
 
 604 So.2d 280
 
 , 292 (Miss. 1992) ). There is no medical evidence to support the idea that a broken rib, whether treated or left untreated, causes a substantial risk of death. There is no medical evidence that a broken rib causes a loss or impairment of any bodily member, organ, or function. There is no evidence, medical or otherwise, regarding any serious or impairing effect on Loftis from her broken rib.
 

 ¶ 60. There certainly exist circumstances in which a broken bone alone would not automatically warrant enhancing a charge of simple assault to the more serious felonious charge of aggravated assault. When the State attempts to pursue an aggravated-assault conviction in circumstances such as presented in this case, it is my opinion that such enhancement requires the jury be properly instructed and that the State should offer at least some medical proof that the injuries are consistent with the legal definition of "serious bodily injury." I, otherwise, concur in part and in the result with the majority's opinion.
 

 WESTBROOKS, J., JOINS THIS OPINION IN PART.
 

 Loftis was sixty-two years old, 5'3", and 115 pounds at the time. Griffin was thirty-six years old, 5'7", and 187 pounds.
 

 The circuit court probably should have requested a response from the State prior to granting Griffin's motion for post-conviction relief.
 
 See
 

 Miss. Code Ann. § 99-39-11
 
 (3) (Rev. 2015) ("If [a] motion [for post-conviction relief] is not dismissed [summarily], the judge shall order the state to file an answer or other pleading within the period of time fixed by the court or to take such other action as the judge deems appropriate ...."). However, as noted above, Griffin's certificate of service shows that she served her motion on the district attorney, and the circuit court sent the district attorney a copy of the order granting Griffin's motion. The State never asked the circuit court to vacate or otherwise reconsider its ruling.
 

 The State does argue that the circuit court's ruling was erroneous because Griffin failed to prove her entitlement to an out-of-time appeal. However, "[a] judgment cannot be set aside simply because it is erroneous."
 
 Bryant Inc. v. Walters
 
 ,
 
 493 So.2d 933
 
 , 937 (Miss. 1986).
 

 Griffin objected only to a subsequent question concerning Loftis's "reputation" and "character for peacefulness versus violence."
 

 See
 

 Odom v. State
 
 ,
 
 767 So.2d 242
 
 , 246 (¶ 13) (Miss. Ct. App. 2000) ("Simple assault is clearly contained within aggravated assault, the main difference pertaining to whether serious bodily injury resulted.").
 

 See
 

 Odem v. State
 
 ,
 
 881 So.2d 940
 
 , 950 (¶¶ 35-36) (Miss. Ct. App. 2004).
 

 Griffin makes a nominally separate argument regarding the "weight of the evidence"; however, she simply states that this argument is "identical to ... her sufficiency challenge." At trial, there was no material dispute or conflicting evidence regarding the nature of Loftis's injuries. Therefore, Griffin's weight-of-the-evidence argument fails for essentially the same reasons as her challenge to the sufficiency of the evidence.
 

 Griffin would have to obtain permission from the Mississippi Supreme Court to file such a motion.
 
 See
 

 Miss. Code Ann. § 99-39-7
 
 (Rev. 2015).